976 F.2d 746
 NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
In re MEDICAL ENGINEERING CORPORATION, Petitioner.
 Misc. No. 331.
 United States Court of Appeals, Federal Circuit.
 June 12, 1992.
 
 Before LOURIE, Circuit Judge, COWEN, Senior Circuit Judge, and RADER, Circuit Judge.
 ON PETITION FOR WRIT OF MANDAMUS
 RADER, Circuit Judge.
 
 ORDER
 
 1
 Medical Engineering Corporation (MEC) petitions for a writ of mandamus to direct the United States District Court for the District of Minnesota to vacate its December 11, 1991 order staying proceedings pending arbitration and to conduct a jury trial regarding the arbitrability of certain issues. American Medical Systems, Inc. (AMS) opposes.
 
 BACKGROUND
 
 2
 MEC sued AMS for infringement of certain claims of three of its patents directed to penile implants. AMS' "Dynaflex" penile prosthesis is the allegedly infringing product. AMS argued that sales of Dynaflex were not infringing because they were covered by licensing agreements between AMS and MEC.
 
 
 3
 AMS moved to stay proceedings pending arbitration and to compel arbitration. AMS argued that various agreements required that certain disputes raised in the present case be reviewed in arbitration proceedings. On December 11, 1991, the district court stayed proceedings pending arbitration. MEC moved for reconsideration on the ground that the district court failed to hold "an evidentiary jury trial on the sharply disputed issue of the parties' intent" to arbitrate such disputes. The district court denied reconsideration.
 
 Settlement and Arbitration Agreements
 
 4
 In March of 1985, AMS, MEC and Dr. Said Hakky[1] signed a settlement agreement (Hakky agreement) concerning the priority of conflicting claims arising in an interference involving an AMS patent and Dr. Hakky's patent application. In particular, section 15.1 concerned the scope of claims to be licensed therein and binding arbitration. Section 15.1 stated:
 
 
 5
 15.1. The parties agree to submit any dispute (a) concerning whether a particular product or process comes within the scope of a claim licensed hereunder, or (b) concerning the validity or enforceability of any such claim under the patent laws of the United States, to arbitration in accordance with the provisions of 35 U.S.C. § 294, except that any award in such arbitration proceedings shall be binding and nonappealable.
 
 
 6
 Later in March of 1985, AMS and MEC signed a settlement agreement (1985 agreement) concerning the priority of claims arising in another interference involving an AMS patent and an MEC patent application. Among other sections, section 17.1 concerned the scope of claims licensed therein and binding arbitration. Sections 17.1 provided:
 
 
 7
 17.1. The parties agree to submit any dispute (a) concerning whether a particular product or process comes within the scope of a claim licensed hereunder, or (b) concerning the validity or enforceability of any such claim under the patent laws of the United States, to arbitration in accordance with the provisions of 35 U.S.C. § 294. Any award in such arbitration proceedings shall be binding and nonappealable....
 
 
 8
 In March of 1986, AMS and MEC signed a binding arbitration agreement (March arbitration agreement) to arbitrate whether AMS's Hydroflex penile prosthesis infringed one or more claims of one of MEC's patents at issue is this case, i.e., U.S. Patent No. 4,353,360 ('360 patent). Sections 2.1, 17.1, 19.1, and 19.3 referred to binding arbitration. These sections provided:
 
 
 9
 2.1. The parties, and each of them, agree to submit their present dispute whether AMS's HYDROFLEX device infringes any claim of MEC's '360 PATENT to binding arbitration in accordance with the provisions of 35 U.S.C. § 294.
 
 
 10
 * * *
 
 
 11
 17.1. The parties agree to submit any dispute concerning whether a particular product or process comes within the scope of a claim licensed hereunder to arbitration in accordance with the provisions of 35 U.S.C. § 294. Any award in such arbitration proceedings shall be binding and nonappealable.
 
 
 12
 * * *
 
 
 13
 19.1. The parties agree to resolve any dispute concerning whether a particular product comes within the scope of a claim licensed hereunder through binding arbitration in accordance with Section 17 hereof.
 
 
 14
 * * *
 
 
 15
 19.3. If AMS wins the arbitration contemplated hereby, and MEC subsequently contends that a device manufactured, used, and/or sold by AMS, other than the HYDROFLEX device, comes within the scope of any '360 PATENT claim but is not subject to the grant of immunity set forth herein, MEC shall notify AMS of its contention and give reasons for such contention.
 
 
 16
 * * *
 
 
 17
 (b) If MEC notifies AMS, within such thirty (30) day period, that it disputes AMS's contention, the dispute shall be resolved by binding arbitration in accordance with Section 17 hereof....
 
 
 18
 In July of 1986, before the arbitration contemplated by the March arbitration agreement was completed, AMS and MEC signed a settlement agreement (July settlement agreement). Therein, it appears that MEC granted AMS a license under the '360 patent to make, use and sell the Hydroflex. Sections 4 and 5.5 related to the effect of the July settlement agreement on the March arbitration agreement. Sections 4 and 5.5 provided:
 
 
 19
 [4.] Any contention by MEC that changes in the HYDROFLEX device cause that device to fall outside the scope of the license granted hereunder and within the scope of one or more claims of the '360 PATENT shall be communicated to AMS. Such contention shall be resolved in accordance with the BINDING ARBITRATION AGREEMENT exactly as the present dispute was to have been resolved, with schedules and selection of an arbitrator(s) to be agreed by the parties in good faith. The intent of the parties is to leave the BINDING ARBITRATION AGREEMENT and its related agreements in place as the vehicle for resolving, by binding arbitration, any renewed dispute concerning the HYDROFLEX device or future changes thereto and the '360 PATENT.
 
 
 20
 * * *
 
 
 21
 5.5. This Agreement constitutes the complete, final and sole Agreement between AMS and MEC with respect to the resolution of the present dispute concerning the HYDROFLEX device and the '360 PATENT. This Agreement specifically supersedes the BINDING ARBITRATION AGREEMENT and the related ESCROW and NONDISCLOSURE agreements between the parties and all prior and contemporaneous discussions, understandings or verbal agreements between the parties as they affect the resolution of the present dispute. This Agreement shall have no effect on any other written Agreement between the parties other than those specifically named above....
 
 DISCUSSION
 
 22
 Citing 9 U.S.C. § 4, MEC argues that the district court erred by not holding a jury trial when MEC alleged that the parties did not intend to submit this type of dispute to arbitration. Section 4 provides:
 
 
 23
 A party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.... The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.... If the making of the arbitration agreement ... be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default ... the court shall hear and determine such issue. Where such an issue is raised, the party alleged to be in default may ... demand a jury trial of such issue....
 
 
 24
 Before the district court, MEC submitted an affidavit from an attorney who represented MEC in proceedings which culminated in the March arbitration agreement, the July settlement agreement, and the 1985 agreement. The attorney stated that MEC did not intend to submit disputes concerning any future AMS product and alleged infringement of the '360 patent to arbitration and that none of the agreements mentions or was intended to cover the other two patents in suit. MEC concludes that a jury trial is necessary to resolve this dispute over the parties' intent. MEC also argues that the Dynaflex prosthesis differs in important respects from the Hydroflex prosthesis and that the Dynaflex is not merely a changed Hydroflex such that it would be required to arbitrate the scope of the license pursuant to the July settlement agreement.
 
 
 25
 AMS first argues that the district court did not compel arbitration under 9 U.S.C. § 4 but instead ordered that the case be stayed pending arbitration pursuant to 9 U.S.C. § 3. AMS notes that 9 U.S.C. § 3 does not have the express requirement that the court hold a trial.[2] Second, AMS argues that even if 9 U.S.C. § 4 applies, a district court should only be required to hold a trial if a party disputes that it made an agreement to arbitrate.
 
 
 26
 Only "exceptional circumstances" that amount to a "judicial 'usurpation of power' " justify the issuance of a writ of mandamus. Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 289 (1988). A party seeking mandamus must show that right to the issuance of a writ is "clear and indisputable." Id. MEC has not shown that its right to the requested relief is clear and indisputable.
 
 
 27
 The district court did not indicate whether it was compelling MEC to arbitrate pursuant to 9 U.S.C. § 4 or staying the proceedings pending arbitration pursuant to 9 U.S.C. § 3.[3] We note that circuit courts have not clearly resolved the differences between the two sections. See, e.g., Zosky v. Boyer, 856 F.2d 554, 556-67 (3d Cir.1988); Matterhorn, Inc., 763 F.2d at 871, 873-74. Section 3 is generally used to stay proceedings where some of the issues therein may be subject to arbitration. Section 4 is generally an independent action brought to compel a party to arbitrate a dispute as required by an agreement, although Section 4 has been used in ongoing proceedings as well. See, e.g., Hartford Financial Systems, Inc. v. Florida Software Services, Inc., 712 F.2d 724, 728 (1st Cir.1983).
 
 
 28
 Assuming the district court's order was pursuant to 9 U.S.C. § 3, MEC has not cited any authority which indicates that MEC has a clear right to a jury trial to determine the arbitrability of defenses raised by AMS. Assuming that the district court compelled arbitration pursuant to 9 U.S.C. § 4, most of the cases[4] cited by MEC as authority for the proposition that a jury trial must be held when "the making of the arbitration agreement" is in issue involve facts where a party alleges the agreement was not properly made (i.e., not signed by a proper official) or that the party was not a party to the agreement. In contrast, MEC argues in hindsight its intent to arbitrate only certain disputes. MEC has not shown that the law clearly supports its position. See note 4, supra.
 
 
 29
 We cannot say that MEC's right to a jury trial is clear when MEC argues that it intended only limited arbitration and that some of the arbitration clauses could be construed to not require arbitration.[5] The Supreme Court has indicated that agreements to arbitrate are to be construed liberally to favor arbitration. A T & T Tech., Inc. v. Communications Workers of America, 475 U.S. 643, 650 (1986) (arbitration should be ordered "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage" (citations omitted)); Mitsubishi Motors Corp., 473 U.S. at 626; Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24-25 (1983). While we do not reach the issue of whether the stay was properly granted, given the federal policy favoring arbitration and the lack of any indication that MEC's right to the relief requested is clear, we conclude that mandamus is not appropriate. If a "rational and substantial legal argument can be made in support of the rule in question, the case is not appropriate for mandamus, even though on normal appeal, a court might find reversible error." In re Cordis Corp., 769 F.2d 733, 737, 226 U.S.P.Q. 784, 786-87 (Fed.Cir.), cert. denied, 474 U.S. 851 (1985). Here, even though the district court's discussion was not extensive and the district court misquoted a portion of one of the agreements, we cannot say that a rational and substantial legal argument could not be made in support of the district court's conclusion. Furthermore, we do not agree that MEC's right to appeal the district court's order would be a meaningless form of relief. See, e.g., Communication Workers of America, AFL-CIO v. American Telephone Company, 932 F.2d 199, 213 (3rd Cir.1991) (a party having to arbitrate before taking an appeal does not mean that the party does not have adequate relief).
 
 
 30
 Accordingly,
 
 IT IS ORDERED THAT:
 
 31
 MEC's petition for a writ of mandamus is denied.
 
 
 
 [1]
 The agreement states that MEC is Dr. Hakky's exclusive licensee
 
 
 [2]
 Section 3 provides:
 If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.
 
 
 [3]
 In its December 11, 1991 order, the district court referred to the motion granted as a motion to stay the action pending arbitration. In its January 28, 1992 order, the district court referred to the December 11, 1991 order as an order requiring MEC to arbitrate the patent disputes
 
 
 [4]
 I.S. Joseph Co., Inc. v. Michigan Sugar Co., 803 F.2d 396 (8th Cir.1986) (issue of whether assignee of party to arbitration agreement acquired right to require arbitration); Matterhorn, Inc. v. NCR Corporation, 763 F.2d 866 (7th Cir.1985) (second contract did not seem to incorporate terms of previous arbitration clause); Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd., 636 F.2d 51 (3rd Cir.1980) (issue that the production manager did not have the authority to execute the contract). While Twin City Monorail, Inc. v. Robbins & Myers, Inc., 728 F.2d 1069 (8th Cir.1984) (court overturned district court's determination that certain types of disputes were arbitrable) is somewhat similar to the circumstances in the present case, it does not show that MEC's right to the relief requested is clear. See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc., 473 U.S. 614, 626 (1985) (while a court must "determine whether the parties agreed to arbitrate that dispute," the Supreme Court noted that "as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability); Par-Knit Mills, 636 F.2d at 55 (dispute over the parties' intent is not enough; an "unequivocal denial that the agreement had been made," supported by appropriate evidence, is sufficient to require a jury trial on the issue of the "making of an arbitration agreement")
 
 
 [5]
 MEC's argument that the Dynaflex is a modified Hydroflex does not clearly support MEC's conclusion that the making of the agreement is in dispute. This issue may relate to whether any of AMS's defenses apply or whether the Dynaflex thereby falls within one of the other claims of the '360 patent. Likewise, the applicability of the defenses to the other patents in suit may also be argued before the arbitrator. However, we do not address which issues the arbitrator should address