# United States Court of Appeals
## For the First Circuit

No. 06-1112

JOAN BERENSON, DAVID BERENSON

Plaintiffs, Appellees

v.

NATIONAL FINANCIAL SERVICES LLC, FIDELITY BROKERAGE SERVICES LLC

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Lipez, Circuit Judge,
Cyr, Senior Circuit Judge,
and Singal,* District Judge.

David C. Frederick, with whom F. Andrew Hessick, Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C., Nicholas C. Theodorou, John A. Shope, William W. Fick, David E. Cole, and Foley Hoag LLP were on brief, for appellants.
Douglas A. Rubel, with whom Johanson Berenson LLP were on brief, for appellees.

April 27, 2007

* Of the District of Maine, sitting by designation.

**LIPEZ**, **Circuit Judge**.   This case concerns the proper boundary between the courts and arbitrators in some novel circumstances.   We must determine whether the district court effectively denied the right of appellants National Financial Services and Fidelity Brokerage Services (collectively "Fidelity")[1] to arbitrate a dispute with their customers, Joan and David Berenson, when it opined on the merits of the Berensons' claims after granting appellants' motion to compel arbitration.

The arbitration agreement in this case requires the arbitration of individual claims between Fidelity and its customers but exempts class actions from the arbitration requirement.   The Berensons brought a putative class action against Fidelity.   For reasons described below, the district court determined that it would adjudicate the merits of the Berensons' claims before addressing the issues of class certification.   All parties agreed to this arrangement.

Fidelity filed several motions for summary judgment, whittling away the Berensons' claims while class certification was pending.   In response to the final such motion, the district court granted the motion in part and denied it in part, dismissing the class claims and declaring that an opinion would follow.   With the class claims dismissed, Fidelity moved to compel arbitration on the

---

[1] National Financial Services and Fidelity Brokerage Services are both subsidiaries of FMR Corp., which is better known as Fidelity Investments.

Berensons' remaining claims, and the district court granted the motion. Shortly thereafter, the district court issued its summary judgment memorandum and order, explaining its earlier ruling.

Fidelity now claims that the district court effectively rescinded its arbitration order when it addressed the merits of the Berensons' remaining claims in its summary judgment memorandum, justifying an interlocutory appeal from the denial of an application to compel arbitration. Fidelity urges us to either vacate the ruling, on the basis that the district court had no authority to issue it, or to reverse the ruling on its merits. Because we do not agree with Fidelity's claim that the district court effectively denied its motion to compel arbitration, we conclude that we have no jurisdiction to entertain Fidelity's appeal.

## I.

### A. Factual Background

Joan and David Berenson opened a brokerage account at Fidelity in the early 1980s. Since at least the mid-1980s, they have used the company's electronic bill payment service, BillPay, to make payments from an interest-earning account comprised of mutual funds. At first, Fidelity operated the service itself; over time, it contracted with different companies to provide the service.

In June 2000, Fidelity contracted with CheckFree, whose electronic bill payment service used the "good funds" method. In that system, the customer's request for payment triggers a debit against the payor's account at 10 p.m. on the day the request is made; the money is then held in a Fidelity account until 1 p.m. the next day, when it is wired to CheckFree. If CheckFree has an agreement with the designated payee, it then wires the money directly to the payee; if there is no such agreement, CheckFree issues and mails a CheckFree corporate check to the payee. This method is known as the "good funds" model because debiting the payor's account immediately assures that a payment is not made unless the customer has sufficient funds, eliminating the possibility that the payment will "bounce." This benefit comes at a cost: the payor loses the opportunity to earn interest on the funds it has scheduled for payment during the period between 10 p.m. on the day payment is initiated and when it is received by the payee, i.e. the "float."

In August 2000, the Berensons began using Fidelity's electronic bill payment service to transfer money from their primary account into another Fidelity account held by Berenson & Company International, which was owned by David Berenson. Because there was no agreement between Fidelity and CheckFree to directly transfer money, CheckFree issued corporate checks to effect those

transfers, resulting in a delay between when the primary account was debited and the corporate account was credited.[2]

In early 2002, Mr. Berenson called Fidelity to complain about this delay, arguing that he believed the interest earned on his money during the period of delay belonged to him and not to Fidelity. He reiterated his complaint in a letter dated September 17, 2002. A Fidelity representative called Mr. Berenson in response to his letter to explain the "good funds" system, but was unsuccessful in his attempt to resolve the Berensons' complaint.

## B. Early Procedural Background

On September 26, 2003, the Berensons filed a putative class action in the United States District Court for the District of Columbia.[3] Significantly, a customer agreement they signed when they opened their Fidelity account contained a provision requiring

---

[2] In concrete terms, when the Berensons initiated a payment from their primary account, those funds were debited against that account that same day. The next day, the money was wired to CheckFree; CheckFree then issued and mailed a check to the Fidelity account of Berenson & Company International. When Fidelity received the check, it deposited it into the Berenson & Company International account. From the time the Berensons' primary account was debited until the time that the Berenson & Company International account was credited, the Berensons earned no interest on transferred funds.

[3] That court later transferred the case to the District Court of Massachusetts because the claims arose in Massachusetts, Massachusetts law governed, and Massachusetts had a greater interest in deciding the suit since the majority of the potential class members reside in Massachusetts.

arbitration of "all controversies that may arise between us." However, a limiting clause stated:

> No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action . . . until: (a) the class certification is denied; (b) the class is decertified; or (c) the customer is excluded from the class by the court.

The Berensons alleged multiple grounds for Fidelity's liability: (1) Fidelity violated the Electronic Funds Transfer Act, 15 U.S.C. § 1693 ("EFTA") both (a) because the interest it gained on the "float" constituted a "fee" that the EFTA requires be disclosed, and (b) because Fidelity failed to respond to the Berensons' complaint in writing within ten days, as required by the EFTA's error resolution provision; (2) Fidelity's failure to disclose this "fee" amounted to either intentional or negligent misrepresentation; (3) Fidelity's collection of this "fee" breached its contract with the Berensons; (4) collection of the "fee" breached Fidelity's fiduciary duty to the Berensons; (5) Fidelity violated the Massachusetts Truth in Savings Law ("MTiSL"), Mass. Gen. Laws ch. 140E, which requires "financial institutions" to disclose certain information to customers when they open an account; and (6) Fidelity's failure to disclose that the Berensons would not receive interest on the "float" of their funds

constituted a violation of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A ("chapter 93A").[4]

On November 7, 2003, Fidelity responded by filing a motion to dismiss and for summary judgment on all claims; that motion reserved the right to compel arbitration if class certification was denied. After a hearing in October 2004, the district court granted summary judgment in an oral ruling for Fidelity on the contract and MTiSL claims. It found no contract language promising that the payor would continue to earn interest on its funds up to the point when the payee received them and concluded that the MTiSL provides no private right of action. It denied the motion as to all other claims, without prejudice. Fidelity filed its second motion for summary judgment on February 8, 2005, alleging that the Berensons' EFTA claims were barred by the statute of limitations.

## C. Class Certification

While the renewed motion for summary judgment was pending, the court held a hearing on the Berensons' motion for class certification. Under the Federal Rules of Civil Procedure, individuals who wish to represent a class of litigants must meet several qualifications. The prerequisites include:

---

[4] The initial claim filed in the District of Columbia also included an allegation that Fidelity had violated the District of Columbia Consumer Procedures Protection Act. That claim was dropped after the case was transferred to Massachusetts.

> (1) the class is so numerous that joinder of
> all members is impracticable ["numerosity"],
> (2) there are questions of law or fact common
> to the class ["commonality"], (3) the claims
> or defenses of the representative parties are
> typical of the claims or defenses of the class
> ["typicality"], and (4) the representative
> parties will fairly and adequately protect the
> interests of the class ["adequacy"].

Fed. R. Civ. P. 23(a).

During the hearing, Fidelity argued that the Berensons could not fairly and adequately protect the interests of the class. Specifically, Fidelity asserted a potential conflict of interest because Mr. Berenson's son was a partner in the law firm representing the Berensons. While the Berensons had a fiduciary duty to the class to ensure a maximum return, they would also have an interest in the law firm maximizing its fees. Consequently, Fidelity argued, they might be unable to represent the true interests of the class.

To deal with this issue, the district court suggested that it try the Berensons' claims on the merits before certifying the class: "Why don't we try the case without it being a class action, win, lose or draw. If [the Berensons] lose, well, you know that. But if [the Berensons] win, then [Fidelity is] collaterally estopped, res judicata, and then we'll see if any class wants to come out of the woodwork and pile on that." Turning to counsel for Fidelity, the court asked: "You're not hurt by that. If I simply

-8-

. . . try this case as an exemplar case. They lose it, then it's lost and we'll see where we are. Then surely their interests won't be typical. But if they win it, then we'll see where we are, too. Doesn't that make sense?" Fidelity replied: "I think that there would be a definite advantage to deferring the class certification because we believe that there are these other dispositive motions that can be addressed to the Berensons in particular. So from the point of view of judicial efficiency we do understand deferral in that respect." If Fidelity saw any incompatibility between the court's exemplar proposal and subsequent arbitration of any of the Berensons' claims, it never disclosed those views at this critical hearing.

## D. Later Procedural Background

Fidelity's second motion for summary judgment urged the court to declare the Berensons' EFTA claims barred by the EFTA's one-year statute of limitations. In a ruling from the bench on March 3, 2005, the court granted the motion as to the claim of inadequate disclosure (the "disclosure claim") because Mr. Berenson's letter of September 17, 2002 indicated knowledge of Fidelity's alleged failure to disclose, but the Berensons did not file suit until September 26, 2003. The court denied the motion, however, as to the Berensons' claim that Fidelity had violated the EFTA by failing to respond in writing within ten days of Mr. Berenson's complaint (the "error resolution claim"). The ten-day

period following the complaint letter expired on September 27, 2002; the lawsuit was therefore just within the statute of limitations on that claim. The court noted that "this partial loss by the Berensons makes them less representative of any class. I don't think perhaps I should say anymore."

On May 26, 2005, Fidelity moved for summary judgment on all remaining claims (the error resolution claim, the misrepresentation claims, breach of fiduciary duty, and the chapter 93A claim). It made some arguments that were particular to the Berensons (i.e., that their claims were time barred) and so might have been relevant to class certification; however, other arguments extended beyond the Berensons' particular claims (i.e., that their misrepresentation claims, error resolution claim, breach of fiduciary duty claim and chapter 93A claim failed as a matter of law). On July 13, the court issued an order granting summary judgment for Fidelity on the misrepresentation and fiduciary duty claims. It again denied summary judgment on the Berensons' error resolution claim,[5] but, because the Berensons did not file their EFTA disclosure claim within the statute of limitations, the court found that "they are not representative of the proposed class and

---

[5] The court's previous ruling denying Fidelity's motion for summary judgment on this claim had addressed only the effect of the statute of limitations.

-10-

thus the class claims are dismissed."[6]  Finally, the court denied Fidelity's motion for summary judgment on the chapter 93A claim. The order also stated that "[a]n opinion will follow shortly."

With the class claims dismissed, Fidelity moved to compel arbitration on the Berensons' remaining individual claims.  In doing so, it raised no objection to the court's intention, disclosed in its July 13 order, to issue an opinion explaining its decision to grant summary judgment on some of Fidelity's claims and to deny it on others.  The district court granted the motion to compel arbitration on August 22.  Two months later, on October 31, the district court issued a written opinion explaining its summary judgment ruling.  The court stated that it allowed the motion as to misrepresentation and fiduciary duty because Fidelity made no misrepresentation and owed no fiduciary duty to the Berensons.  It denied the motion as to the error resolution claim, rejecting Fidelity's arguments that: (1) its conduct could not be deemed "error" under the EFTA; (2) the Berensons never properly notified Fidelity of an "error"; and (3) any error resolution claim is untimely.

Addressing the Berensons' chapter 93A claim, the court concluded that the Berensons' allegations were sufficient to state a claim under the statute for an unfair trade practice.  The court

---

[6] The court did not specify its reasons for denying class certification as to the Berensons' other claims.

noted that Massachusetts courts have adopted the following test to determine an unfair trade practice:

> (1) whether the practice . . . offends public policy as it has been established by statutes, the common law, or otherwise whether . . . it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen).

Berenson v. Nat'l Fin. Servs., LLC, 403 F. Supp. 2d 133, 149 (D. Mass. 2005) (citing Purity Supreme, Inc. v. Attorney Gen., 407 N.E.2d 307 (Mass. 1980)). With that framework in mind, the court opined that the Berensons had alleged a potentially viable chapter 93A claim based on their allegations under the EFTA and MTiSL. It accepted their argument that lost interest could be a "fee" under the EFTA and that Fidelity could be a "financial institution" as defined by the MTiSL. A chapter 93A claim also was timely because the statute has a four-year limitations period.[7] The court therefore concluded that Fidelity was not entitled to judgment as a matter of law.

---

[7] The district court therefore held that, although the EFTA's one-year statute of limitations bars the Berensons' direct EFTA "disclosure" claim, the four-year statute of limitations governing chapter 93A allows the Berensons to go forward with a chapter 93A claim based on Fidelity's lack of disclosure under the EFTA. Similarly, while the MTiSL did not create a private right of action, it provided a sufficient basis on which to establish a claim under chapter 93A.

Shortly thereafter, Fidelity filed a motion asking the court to take one of three alternative steps: to reconsider its summary judgment ruling, to certify it for interlocutory appeal, or to vacate it in part.  Arguing for reconsideration, Fidelity claimed that the court made three critical errors of law in finding that: (1) the subject of the Berensons' complaints constituted an "error," triggering the EFTA's error resolution provisions, even though the claimed impropriety did not fall within any of the narrowly defined categories of "error" enumerated in the statute;[8] (2) the lost opportunity to earn interest was a "fee" subject to disclosure under EFTA; and (3) Fidelity is a "bank" under MTiSL.

Alternatively, Fidelity argued that the court should certify its rulings for interlocutory appeal under 28 U.S.C. § 1292(b), which provides that:

---

[8] Under the applicable statutory provision, an error consists of:

> (1) an unauthorized electronic fund transfer; (2) an incorrect electronic fund transfer from or to the consumer's account; (3) the omission from a periodic statement of an electronic fund transfer affecting the consumer's account which should have been included; (4) a computational error by the financial institution; (5) the consumer's receipt of an incorrect amount of money from an electronic terminal; (6) a consumer's request for additional information or clarification concerning an electronic fund transfer or any documentation required by this subchapter; or (7) any other error described in regulations of the Board.

15 U.S.C. § 1693f(f).

When a district judge, in making in a civil action an order not otherwise appealable . . . shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

Fidelity argued that the issues in the case involve open questions of controlling law, are important because of the impact they are likely to have throughout the financial industry, and that resolution of these issues was likely to materially advance the ultimate termination of litigation. Finally, Fidelity argued that the court should withdraw its order to the extent that it concerned substantive matters that should properly be decided by arbitrators, i.e., the legal points on which it sought reconsideration.

The court denied Fidelity's motion without explanation on November 28, 2005. Fidelity filed this interlocutory appeal under the Federal Arbitration Act, 9 U.S.C. § 16(a)(1)(B) ("FAA"),[9] which provides, in pertinent part, that "[a]n appeal may be taken from an order denying a petition . . . to order arbitration to proceed." Fidelity argues that, once the district court entered its order to

_____

[9] At times, Fidelity describes its appeal as falling under § 16(a)(1)(C), which allows an appeal to be taken from an order "denying an application under section 206 of this title to compel arbitration." Because Fidelity more consistently invokes § 16(a)(1)(B) and because these provisions are effectively the same here, this opinion will refer to that section as the sole basis for the appeal.

compel arbitration, it no longer had the authority to address the merits of any remaining claims. By discussing the EFTA and chapter 93A claims on the merits in its October 31 opinion, Fidelity asserts that the district court effectively denied its request for arbitration as to those claims. Similarly, Fidelity argues that the court's refusal to reconsider or vacate its October 31 opinion and order constituted a second denial of its request for arbitration of the Berensons' claims. At the heart of Fidelity's appeal lie two concerns: (1) that the arbitrator who will now resolve the parties' dispute will rely on the court's substantive determinations, which Fidelity views as erroneous; and (2) that an unwelcome district court decision will remain on the books.

## II.

The Berensons insist that we do not have jurisdiction to hear this appeal. We begin by examining that proposition. Ordinarily, appeal is available only from a final judgment of the district court. Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 6 (1st Cir. 2005). However, there are a few exceptions to this general rule, including when a party seeks interlocutory review of a district court's order "denying a petition . . . to order arbitration to proceed," 9 U.S.C. § 16(a)(1)(B). Although the dispute between Fidelity and the Berensons is now before an arbitrator, Fidelity argues that the district court's October 31

and November 28 orders effectively denied Fidelity's motion to compel arbitration, permitting this court's interlocutory review.

We disagree with Fidelity's characterization of the district court's actions. First, Fidelity posits that the district court improperly entered a judgment on the merits of the arbitrable claims <u>after</u> it denied certification and ordered arbitration. In fact, the judgment denying Fidelity's motion for summary judgment on the EFTA and Chapter 93A claims officially entered on July 13, 2005, not on October 31, 2005. If it had not, the court could not have granted Fidelity's motion to compel arbitration of those claims on August 22, 2005 because the class claims would have still been pending. The court's October 31 memorandum was merely a <u>nunc pro tunc</u> explanation of the reasons for the July 13 <u>ore tenus</u> judgment on the merits, and not a separate judgment.

Second, the July 13 judgment and October 31 opinion were a direct result of two decisions made by Fidelity in the course of defending itself against the Berensons' complaint: (1) its decision to allow the court to try the Berensons' case as an "exemplar case" before it decided whether to certify a class; and (2) its subsequent request for summary judgment, in which it urged the court to make a broad array of merits judgments extending beyond the particular facts of the Berensons' claims.[10] Fidelity itself

---

[10] Fidelity urged the court to find that the misrepresentation claims were barred as a matter of law because "the available

-16-

had invited the court to consider broadly the merits of the full panoply of the Berensons' claims before certifying a class.

Resisting the implications of this conclusion, Fidelity argues that, in passing the FAA, 9 U.S.C. §§ 1-16, Congress sought to "overcome courts' refusals to enforce agreements to arbitrate." Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 270 (1995); see also Volt Info. Scis. v. Bd. of Trs., 489 U.S. 468, 479 (1989) (stating that the "primary purpose" of the FAA is to ensure "that private agreements to arbitrate are enforced according to their terms"). The Supreme Court has announced some principles that further this purpose:

> The first principle . . . is that arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit . . . . The second rule, which follows inexorably from the first, is that the question of arbitrability . . . is undeniably an issue for judicial determination. . . . The third principle derived from our prior cases is that, in deciding whether the parties have agreed to submit a particular grievance to

---

agreements provided to Fidelity customers, including the Berensons, clearly disclose the material facts that the Berensons allege were omitted." It contested the error resolution claim, urging the court to find that "Fidelity's actions pursuant to the contract are not an 'error' triggering the EFTA's notice and response provisions." It argued that the court should find no breach of fiduciary duty as a matter of law because Fidelity does not act as a fiduciary in its provision of the BillPay service and that the claim that "supposed failures to disclose together violate the Massachusetts Consumer Protection Act . . . fails as a matter of law because . . . the underlying common law and statutory causes of action upon which it is based also fail."

-17-

> arbitration, a court is not to rule on the
> potential merits of the underlying claims.

AT&T Tech., Inc. v. Communic'ns Workers of Am., 475 U.S. 643, 648-49 (1986).  Fidelity relies heavily on the third "principle" of this analysis, noting that § 3 of the FAA requires that, once a party moves for arbitration of an issue referable to arbitration, the district court "shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement," 9 U.S.C. § 3.

Fidelity cites an array of cases for the principle that courts should avoid ruling on any underlying claims that may ultimately be subject to arbitration.  It also emphasizes our statement that "'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration,' given the pro-arbitration policy of the [FAA]," Marie, 402 F.3d at 9 (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)); see AT&T Techs., 475 U.S. at 649 ("[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims."); Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) ("[D]istrict courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."); MedCam, Inc. v. MCNC, 414 F.3d 972, 975 (8th Cir. 2005) (describing the proper scope of the court's inquiry as "ask[ing] only whether the parties have agreed to

-18-

arbitrate a particular claim and . . . not reach[ing] the potential merits of the claim"); Painewebber Inc. v. Elahi, 87 F.3d 589, 595 (1st Cir. 1996) (stating that "issues other than 'arbitrability' are presumptively for the arbitrator").

As generalities, these principles are sound. But the particulars of this case are equally important. Here the parties carved out class action claims from their agreement to arbitrate. The Berensons brought a putative class action, placing their claims against Fidelity appropriately before the courts. When the court suggested to the parties that it try the Berensons' case as an "exemplar case," Fidelity agreed to this arrangement. Even if Fidelity harbored some notion that the trial of the Berensons' case could be limited to issues peculiar to the Berensons, and hence relevant to their suitability as class representatives, they did not proceed on that basis. Instead, Fidelity invited the court to make sweeping merits determinations in its motion for summary judgment.

Consistent with the view that arbitration is a matter of private agreement, courts have recognized that parties may waive their right to arbitration and consent to proceed on the merits through the courts. See, e.g., In re Citigroup, Inc., 376 F.3d 23, 26 (1st Cir. 2004) ("A party may waive arbitration expressly or implicitly."); Restoration Pres. Masonry, Inc. v. Grove Eur. Ltd., 325 F.3d 54, 60 (1st Cir. 2003) ("Parties are free to waive their

rights to arbitration by contract. Waiver can either be express or implied.") (citations omitted); <u>Navieros Inter-Americanos, S.A.</u> v. <u>M/V Vasilia Express</u>, 120 F.3d 304, 316 (1st Cir. 1997) ("[W]e have repeatedly held that a party may, by engaging in litigation, implicitly waive its contractual right to arbitrate.").

The Berensons do not claim that Fidelity's agreement to allow the court to address the merits of their claim before addressing the issue of class certification constituted a full waiver of its right to arbitrate. The Berensons argue, however, that Fidelity's agreement does bar Fidelity from now objecting to substantive rulings that it invited the court to make. Arguing for a narrower construction of its agreement, Fidelity invokes its reservation of its right to arbitrate in its November 2003 motion for summary judgment.[11] Relatedly, Fidelity attempts to distinguish substantive issues the court necessarily addressed in order to determine whether the Berensons could adequately represent the class from substantive rulings that were unnecessary to the resolution of class certification (i.e., those that did not bear on

---

[11] Fidelity's memorandum in support of its November 2003 motion to dismiss and for summary judgment notes in a footnote on the second page:

> Fidelity's current Customer Agreement with the plaintiffs provides that disputes must be arbitrated but that Fidelity cannot compel arbitration of putative class actions before certification is denied. Fidelity reserves the right to compel arbitration if this Court denies class certification, as it should if the case will proceed.

-20-

the adequacy or typicality of the Berensons as class representatives). While Fidelity does not contest the propriety of the court's rulings on the former, it argues that the latter – particularly the court's rulings regarding the EFTA and MTiSL claims – were improperly issued.[12]

This argument fails for two reasons: (1) the agreement to proceed to the merits occurred after the November 2003 reservation and modified it; and (2) Fidelity never sought to establish a line between permissible and impermissible merits determinations. Fidelity agreed that the court should proceed to the merits of the Berensons' case without it being a class action; indeed, it expressed its confidence that deferring class certification would be advantageous because it believed "that there are these other dispositive motions that can be addressed to the Berensons in particular." To the extent that Fidelity only contemplated dispositive motions that raised issues comparable to the statute of limitations issue on the Berensons' disclosure claim under the EFTA, it moved aggressively beyond such contemplation when it

---

[12] The Berensons emphasize that even these rulings were deeply entwined with class certification. For example, if the district court had decided that lost interest on "float" could not be considered a "fee" requiring disclosure under the EFTA, then the late filing of the Berensons' claim on that issue would not have disqualified them as class representatives and the issue of class certification might still be before the district court. We need not resolve the debate between the parties on this point because we find that, entwined or not, Fidelity agreed that the court should address these issues.

-21-

sought summary judgment rulings on the merits of all of the Berensons' claims, gambling that it could defeat those claims and therefore preempt the class action before a decision on class certification became necessary. Having lost its gamble, Fidelity now asks us to invalidate the unwelcome summary judgment ruling of the district court. That we cannot do.[13]

Fidelity laments that the court's summary judgment ruling may prejudice the arbitration of its claims. We make no judgment here about the relationship between the decision of the district court and the arbitration proceedings. In the first instance, it is up to the arbitrator to decide how that decision should be handled in the arbitral forum. If there is to be an appeal from the arbitration decision, Fidelity can raise in that appeal any of its concerns about the arbitrator's treatment of the district court's summary judgment ruling.

---

[13] Fidelity also argues by analogy that a decision granting a motion to compel arbitration divests the trial court of its authority to address the merits of a case. It points out that a trial court cannot amend an opinion after a notice of appeal has been filed, see Inland Bulk Transfer Co. v. Cummins Engine Co., 332 F.3d 1007, 1013-14 (6th Cir. 2003), and that an appeals court cannot issue a panel opinion after a case settles but before mandate is issued, see Key Enters. v. Venice Hosp., 9 F.3d 893, 900 (11th Cir. 1993). We find these analogies strained and inapt. The parties have not settled this case, nor has the district court issued an opinion after an appeal was taken. Instead, the court issued its decision in accordance with a procedure accepted by Fidelity to try the Berensons' claims as an exemplar case and in response to its own request for summary judgment.

Fidelity is also unhappy that a district court decision it thinks is wrong remains on the books while arbitration proceeds.[14] However, with its successful motion to seek arbitration after the district court issued its July 13 order, Fidelity deprived itself of the opportunity to challenge the merits determinations of the district court through a traditional direct appeal from a final judgment of the district court after completion of the pre-trial and trial proceedings in the exemplar case. Fidelity only has itself to blame for this self-inflicted wound.

We agree with Fidelity that, in the typical arbitration case, it is important to heed the Supreme Court's admonition "not to rule on the potential merits of the underlying claims," AT&T Techs., 475 U.S. at 650. However, this maxim was intended as a shield, protecting the parties to an arbitration agreement from an overzealous court that did not understand its limited role in deciding a motion to compel arbitration. Here Fidelity wields this principle as a sword, seeking not only to undermine the court's legitimate – indeed necessary – role in explaining the summary judgment ruling Fidelity requested, but also to undo the series of

_____

[14] We note that the denial of a motion for summary judgment (viz., on the EFTA and Chapter 93A claims), although a provisional decision on the merits, is not a "final judgment" on the merits. See e.g., Bethlehem Steel Export Corp. v. Redondo Constr. Corp., 140 F.3d 319, 321 (1st Cir. 1998).

tactical decisions Fidelity made in defending itself against the Berensons' claims.[15]

The court's October 31 summary judgment opinion was a direct consequence of Fidelity's agreement to allow the court to try the Berensons' claims in an exemplar case before certifying a putative class action and its request for summary judgment on all remaining claims in the case.  It was not an effective denial of Fidelity's petition to compel arbitration on the Berensons' individual claims; indeed, that arbitration is now proceeding.  Lacking jurisdiction over Fidelity's interlocutory appeal, we must dismiss it.

**<u>So ordered.</u>**

---

[15] Fidelity also construes the November 28 order denying Fidelity's motion to reconsider or vacate its October 31 order as a denial of Fidelity's request for arbitration in violation of § 16(a)(1)(B).  This claim depends crucially upon the premise that the district court lacked the authority to pass on the merits of the Berensons' claims once it granted Fidelity's petition to compel arbitration.  For the reasons already stated, we reject this premise and therefore find that we have no jurisdiction to hear Fidelity's appeal of the November 28 order under § 16(a)(1)(B).