TWIN CITY MONORAIL, INC.,
Appellee,

v.

ROBBINS & MYERS, INC., Appellant.

No. 82–2431.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 10, 1983.
Decided Feb. 27, 1984.

David F. Fitzgerald, Steven J. Kluz, Eric J. Magnuson, Rider, Bennett, Egan & Arundel, Minneapolis, Minn., for appellee.

Morris M. Sherman, James V. Roth, Leonard, Street & Deinard, Minneapolis, Minn., for appellant.

Before ROSS, McMILLIAN and BOWMAN, Circuit Judges.

McMILLIAN, Circuit Judge.

Robbins & Myers, Inc. (Robbins & Myers), appeals from an order entered in the District Court for the District of Minnesota granting a motion filed by Twin City Monorail, Inc. (Twin City), to compel arbitration of their contract dispute. For reversal Robbins & Myers argues that the district court erred in granting the motion to compel arbitration because whether the arbitration clause was intended to cover the particular dispute was in issue. For the reasons discussed below, we reverse and remand for further proceedings.

On November 6, 1981, Robbins & Myers contracted to sell its Twin City Monorail division to Twin City. This contract contained an estimated final purchase price of $1,250,000, but § 3.1 of the contract provided that the actual price would be the "book value" of the inventory on hand at the time of the closing. Section 3.2 of the contract gave Twin City the right to object in writing, within ten days, to any "item" contained in the statement of inventory. Furthermore, § 3.2 provided that if any such objection was not resolved within thirty days of the closing, it was to be submitted to a certified public accountant (CPA) for arbitration. Because these two clauses of the contract are integral to an understanding of this case, they are set forth fully in the margin.[1]

The transaction was closed on March 22, 1982, and pursuant to the contract Robbins & Myers conducted a final inventory count and arrived at an inventory book value of $1,377,713.35. Twin City subsequently raised eight objections to the inventory statement. These objections were not resolved within thirty days of the closing, and Robbins & Myers refused to submit them to arbitration. Consequently, Twin City insti-

---

1. The Contract provisions provided as follows:

3.1. The final purchase price ("Purchase Price") payable by Buyer to Seller for the Assets and Stock shall be Seller's book value of Inventory to be sold and transferred at the Closing, as reflected on the Statement of Inventory. For purposes of the Closing only, the book value of the Inventory and Purchase Price is estimated and deemed to be $1,250,000.

3.2. A physical count shall be taken as of the Closing in order to determine the Inventory to be sold and transferred to Buyer pursuant to this Agreement. The book value of Inventory shall be reflected in the Statement of Inventory, and the Statement of Inventory shall be delivered to Buyer no later than fourteen (14) days after the Closing ("Statement Date"). Buyer shall have the right to be present and observe Seller's physical count of the Inventory, and to object in writing to any item contained in the Statement of Inventory within ten (10) days from the Statement Date. In the event that Buyer does not object to any item contained in the Statement of Inventory within a ten (10) day period following the Statement Date, then Buyer shall be deemed to have accepted that item. The parties shall endeavor in good faith to resolve all such objections within thirty (30) days of the Closing. Any such objection which is still unresolved after such period shall be promptly submitted for resolution to an independent certified public accountant located in the Minneapolis/St. Paul Area who is acceptable to both parties.

tuted an action under 9 U.S.C. § 4 (1982) to compel arbitration. The parties thereafter agreed to submit five of the objections (all involving either the actual physical count or the characterization of certain items as inventory) to a CPA for arbitration.

The three objections which remained before the district court, and which are the subjects of this appeal, involve: (1) the method of valuing the inventory, (2) the total value of the inventory and (3) the basis for pricing that inventory. These issues are, in essence, differing facets of a dispute about the method which should be used to value the inventory. Twin City argues that the parties intended to use a LIFO (Last In-First Out) valuation method, while Robbins & Myers argues that a FIFO (First In-First Out) method was contemplated. The importance of determining which method was intended is demonstrated by the parties' assertions that the difference in valuation may be as much as $700,000.

The crux of Twin City's argument is that a FIFO valuation method is commonly used as an internal management tool, but it is not properly used for the determination of inventory book value. Twin City argues that LIFO is the proper method of assigning value to inventory, especially since Robbins & Myers used such a method in reporting its aggregate corporate earnings. Robbins & Myers, however, argues that the $1,250,000 estimated purchase price was based on FIFO and that the corporation had *two* book values. One book value, which was based on FIFO, was consistently carried on the books of the Twin City Monorail Division. The other book value, which was based on LIFO, was used only on Robbins & Myers' consolidated balance sheet for all divisions. This dichotomy had been established for tax purposes and is permitted by the Internal Revenue Service. *See* Treas.Reg. § 1.472–2 (1981).

█ The narrow issue presented by this appeal is whether the district court erred in compelling the submission of the dispute over the valuation method to arbitration. We have jurisdiction of the appeal under 28

U.S.C. § 1291, because an order compelling arbitration pursuant to 9 U.S.C. § 4 is final and appealable. *See, e.g., Hartford Financial Systems v. Florida Software Services, Inc.,* 712 F.2d 724, 728 (1st Cir.1983).

Title 9 U.S.C. § 4 provides in part as follows:

The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed. If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue. Where such an issue is raised, the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose. If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed. If the jury find that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof.

When presented with the petition to compel arbitration, the district court first had to determine whether the making of the arbitration clause was in issue and, if it

was, to proceed to trial on that issue. In reviewing the district court's decision, we are limited to determining two issues of federal substantive law: "(1) whether an express written agreement to arbitrate the subject matter of the present dispute exists between the parties, and (2) if so, whether the agreement to arbitrate has been breached." *Johnson Controls, Inc. v. City of Cedar Rapids,* 713 F.2d 370, 373 (8th Cir.1983).

█ In the present case it is not disputed that the parties did agree to arbitrate. The inquiry, however, should not end at this point. If "there is an issue as to which disputes the parties intended the arbitration clause to cover, ... [there] would be an issue 'as to the making of the arbitration agreement.'" *Pollux Marine Agencies, Inc. v. Louis Dreyfus Corp.,* 455 F.Supp. 211, 217 (S.D.N.Y.1978), *citing International Union of Operating Engineers, Local Union No. 139 v. Carl A. Morse, Inc.,* 387 F.Supp. 153, 157 (E.D.Wis.1974), *aff'd,* 529 F.2d 574, 579 (7th Cir.1976). As stated by the Supreme Court, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). In the present case, arbitration cannot be compelled unless it is found both that the parties agreed to arbitrate and that the parties intended the arbitration clause to cover disputes about the accounting method to be used for valuing the inventory.

There is some confusion, however, as to the proper standard to be used in determining whether the parties intended a particular dispute to be within the scope of an arbitration clause. As pointed out by Twin City, many courts, including the Supreme Court, have indicated that the analysis should be weighted heavily in favor of arbitration. Other courts, however, have indicated that the analysis may be somewhat

more balanced. *See National Railroad Passenger Corp. v. Missouri Pacific R.R.,* 501 F.2d 423, 427 (8th Cir.1974) (the court's function is to determine whether the clause *"on its face"* governs the dispute in issue). However, the decisions calling for an interpretation of intent which is weighted toward arbitrability involve either or both a labor arbitration clause or an extremely broad arbitration clause. For example, *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. at 582–83, 80 S.Ct. at 1352–53 (stating that an order to arbitrate must issue "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute"), involved a very broad arbitration agreement, which provided as follows:

> "Should differences arise between the Company and the Union or its members employed by the Company as to the meaning and application of the provisions of this Agreement, or should any local trouble of any kind arise, there shall be no suspension of work on account of such differences but an earnest effort shall be made to settle such differences immediately in the following manner:
>
> . . . .
>
> Fifth, if agreement has not been reached the matter shall be referred to an impartial umpire for decision."

*Id.* at 576, 80 S.Ct. at 1349 (quoting the collective bargaining agreement). The Court, in reversing the lower court's refusal to compel arbitration under § 301(a) of the National Labor Relations Act, was influenced not only by the breadth of this provision but also by the national policy of avoiding industrial strife *via* labor arbitration.[2]

█ Thus *United Steelworkers v. Warrior & Gulf Navigation Co.* can be cited for the proposition that the intent behind a commercial arbitration clause should be interpreted in such a manner as to encourage

---

**2.** The Court stated that "the run of arbitration cases ... becomes irrelevant to our problem.... In the commercial case, arbitration is the substitute for litigation. Here arbitration is the substitute for industrial strife." *United*

*Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 578, 80 S.Ct. 1347, 1350, 4 L.Ed.2d 1409 (1960). Thus, the Court recognizes the dichotomy between commercial and labor arbitration.

arbitration, *if that clause is broadly drafted.* *See, e.g., National Railroad Passenger Corp. v. Missouri Pacific R.R.,* 501 F.2d at 427–28 (acknowledging the labor/commercial dichotomy, but citing *United Steelworkers* for support of interpretation of a broad commercial arbitration clause). When a court, however, is presented with a narrowly drawn commercial arbitration clause, case law suggests that the court should properly consider the scope of that clause.

> If the arbitration clause is broad and arguably covers disputes concerning contract termination, arbitration should be compelled and the arbitrator should decide any claim that the arbitration agreement, because of substantive or temporal limitations, does not cover the underlying dispute.... However, as we recently noted in *Rochdale Village, Inc. v. Public Service Employees Union,* 605 F.2d 1290, 1295 (2d Cir.1979), when "dealing with a narrower arbitration clause, a court's inquiry is not so circumscribed, and it will be proper to consider whether the conduct in issue is *on its face* within the purview of the clause." Hence, if the arbitration agreement cannot reasonably be construed to cover [a particular] dispute ..., arbitration need not be compelled.

*McAllister Bros. v. A & S Transportation Co.,* 621 F.2d 519, 522 (2d Cir.1980) (emphasis added); *accord Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.,* 636 F.2d 51, 54 (3d Cir.1980) ("Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express unequivocal agreement to that effect." (footnote omitted)).[3] We believe this approach is consistent with the "on its face" language of our decision in *National Railroad Passenger Corp. v. Missouri Pacific R.R.*[4] Therefore, we must examine the clause in question to determine if it is broadly or narrowly drawn and whether there is an issue of fact as to whether the method of valuation was intended to be within the scope of that clause.

 The arbitration clause in the present case states that the "[b]uyer shall have the right to ... object in writing to any *item* contained in the Statement of Inventory ... [and] [a]ny such objection which is ... unresolved ... shall be promptly submitted for resolution to an independent certified public accountant." (Emphasis added.) We believe it is significant that this language extends only to disputed items in the inventory statement and not to all disputes arising out of the contract. Thus, the clause in question is narrowly drawn and the presumption of arbitrability is lessened.

 Given this narrow clause, we hold that the district court erred in finding that the method of valuation was arbitrable. A

**3.** Twin City cites several cases supporting presumptive arbitrability. These cases, however, contain characteristics that either place them within the broad application category set out above or which show specific intent within the confines of a narrowly drafted arbitration clause. *See, e.g., Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 398, 87 S.Ct. 1801, 1803, 18 L.Ed.2d 1270 (1967) (broad arbitration clause: "Any controversy or claim arising out of or relating to this Agreement, or the breach thereof ...."); *Singer Co. v. Tappan Co.,* 403 F.Supp. 322 (D.N.J.1975) (narrow commercial arbitration clause, but issue appears *on its face* to have been within the scope of the clause) *aff'd mem.,* 544 F.2d 513 (3d Cir.1976). *Singer* also implicitly derides the labor/commercial dichotomy, noting that "[t]his Court will assume that there is still *some* distinction between principles relating to arbitrability of labor disputes ... and commercial disputes." 403 F.Supp. at 329 n. 6 (empha-

sis in original). The *Singer* court, however, gave no rationale for the emphasis in its statement, and the weight of authority is against this implication.

**4.** Our decision in *Johnson Controls, Inc. v. City of Cedar Rapids,* 713 F.2d 370 (8th Cir.1983), does not undercut the *National Railroad Passenger* language. In *Johnson Controls* we stated that "any doubts about the construction or breach of the putative arbitration provision are to be resolved in favor of ordering arbitration." *Id.* at 373. The arbitration clause in *Johnson Controls* was, however, very broad. Furthermore, the arbitration issue in that case concerned two conflicting arbitration clauses (one mandatory and the other consensual) and was resolved without reference to the *scope* of either clause. Consequently, *Johnson Controls* is consistent with analyzing a narrow arbitration clause to determine if it can be *reasonably construed* to cover the dispute in question.

significant factor supporting our conclusion is the use of the word "item" in the arbitration clause, which connotes materiality in the physical sense and militates against the inclusion of the accounting method as an arbitrable issue. Additionally, the clause was contained in a paragraph concerning the taking of a physical count of inventory and not in the paragraph which established inventory "book value" as the purchase price.

The decision in *Singer Co. v. Tappan Co.,* 403 F.Supp. 322 (D.N.J.1975) *aff'd mem.,* 544 F.2d 513 (3d Cir.1976), relied on by the district court and by Twin City, is distinguishable. In *Singer* the contract involved the purchase of a business unit and also contained a narrow arbitration clause. The district court, when presented with this contract and a dispute over accounting methods, entered an order compelling arbitration. The clause in *Singer,* however, applied to any unresolved "matter" regarding compliance with the Generally Accepted Accounting Procedures (GAAP) agreed to by the parties. Thus, unlike the present case the *Singer* arbitration agreement, although relatively narrow, included *on its face* the resolution of disputes over accounting principles.

Accordingly, we reverse the district court's order compelling arbitration.