# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2572

_____

MedCam, Inc., a Washington     *
corporation, now known as     *
OptiMEMS, Inc.,     *
    *
       Plaintiff - Appellee,     *
    *
       v.     *
    *
MCNC, a North Carolina     *
non-for-profit corporation,     *
    *
       Defendants - Appellant,     *
    *
MCNC Endowment, a North Carolina     *     Appeal from the United States
non-for-profit corporation; MCNC     *     District Court for the
Enterprise Fund, L.P., a North Carolina     *     District of Minnesota.
limited partnership; MCNC Research     *
and Development Institute, a North     *
Carolina non-for-profit corporation;     *
MCNC Ventures, LLC, a North     *
Carolina limited liability corporation;     *
JDS Uniphase, a Delaware corporation,     *
as successor of Cronos Integrated     *
Microsystems, Inc.; Cronos     *
Microsystems, Inc., a Delaware     *
corporation; Cronos MEMS, Inc., a     *
North Carolina corporation; MCNC     *
Cronos Equity Associates, LLC, a     *
North Carolina limited corporation     *
whose status is listed as dissolved,     *
    *
       Defendants.     *

_____

Submitted: February 16, 2005
Filed: July 18, 2005

_____

Before MORRIS SHEPPARD ARNOLD, BOWMAN, and GRUENDER, Circuit
Judges.

_____

BOWMAN, Circuit Judge.

MCNC appeals from the District Court's[1] order denying MCNC's motion to dismiss certain claims asserted by MedCam, Inc. (MedCam) against MCNC and granting MedCam's motion to compel arbitration of those claims. We affirm.

## I.

The essential facts of this case can be stated briefly.[2] MedCam and MCNC sought to develop medical imaging technology together, and they entered into a contract (the Agreement) to govern the terms of their joint development. The Agreement restricted the parties' ability to disclose or transfer the technology developed under the Agreement. The Agreement also contained a clause that restricted MCNC from competing with MedCam for a period of two years beyond the termination of the Agreement. Specifically, the noncompete clause barred MCNC from designing or producing devices in the "MedCam Field," which was an area of imaging technology defined in the Agreement. Agreement ¶¶ 1.16, 6.5. Most

_____

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

[2]For a more detailed factual summary, please refer to the District Court's order from which MCNC appeals. Memorandum and Order of May 5, 2004 (compelling Defendant MCNC to arbitration).

importantly, the Agreement specified that "[a]ll disputes, controversies or differences arising out of or in connection with this Agreement" would be finally settled by binding arbitration. Id. ¶ 9.5.

After several years of jointly developing technology under the Agreement, MCNC terminated the Agreement and began working with other companies to develop optical technology. MedCam claimed that MCNC improperly transferred technologies developed under the Agreement to other companies and that the technologies MCNC developed with and through these other companies violated the noncompete clause of the Agreement. MedCam asked the District Court to compel arbitration of its claims against MCNC and several other companies under the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16 (2000). The District Court dismissed MedCam's claims against the other companies, but entered an order denying MCNC's motion to dismiss MedCam's claims against MCNC and granting MedCam's motion to compel arbitration of those claims. MCNC appeals the order denying its motion to dismiss and granting MedCam's motion to compel arbitration.

**II.**

When it enacted the FAA, Congress intended for parties who have agreed to arbitrate disputes to do so in a speedy manner without delay or obstruction by the courts. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404 (1967). Accordingly, the FAA limits a district court's initial role in any challenge to an arbitration agreement to deciding whether "the making of the agreement for arbitration or the failure to comply therewith" is at issue. 9 U.S.C. § 4 (2000). As to whether "the making of the agreement for arbitration" is in issue, id., our Circuit has refined this inquiry to asking 1) whether the agreement for arbitration was validly made and 2) whether the arbitration agreement applies to the dispute at hand, i.e., whether the dispute *falls within the scope* of the arbitration agreement. See Bob Schultz Motors, Inc. v. Kawasaki Motors Corp., U.S.A., 334 F.3d 721, 726 (8th Cir.

2003) (citing Houlihan v. Offerman & Co., 31 F.3d 692, 694–95 (8th Cir. 1994)), cert. denied, 540 U.S. 1149 (2004); Twin City Monorail, Inc. v. Robbins & Myers, Inc., 728 F.2d 1069, 1072 (8th Cir. 1984) (stating that arbitration is a matter of contract law and that, absent an arbitration agreement regarding the particular dispute, a party may not be required to submit the dispute to arbitration) (citing United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960)). Here, the dispute is centered on whether MedCam's claims fall within the scope of the arbitration clause contained in the Agreement.

The scope of an arbitration agreement is given a liberal interpretation, with any doubts resolved in favor of arbitration. Lyster v. Ryan's Family Steak Houses, Inc., 239 F.3d 943, 945 (8th Cir. 2001). An order compelling arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Id. at 945 (quoting AT&T Techs., Inc. v. Comm. Workers of Am., 475 U.S. 643, 650 (1986) (quoting Warrior & Gulf Navigation Co., 363 U.S. at 582–83)). Moreover, the question of scope asks only whether the parties have agreed to arbitrate a particular claim and does not reach the potential merits of the claim. Kansas City S. Transp. Co. v. Teamsters Local 41, 126 F.3d 1059, 1067 (8th Cir. 1997) (quoting AT&T Techs., 475 U.S. at 649). Regardless of the scope of the arbitration agreement, the district court's initial inquiry under 9 U.S.C. § 4 remains "an expeditious and summary hearing, with only *restricted inquiry* into factual issues." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 22 (1983) (emphasis added). We review de novo the District Court's order compelling arbitration. Lyster, 239 F.3d at 945.

We hold, as did the District Court, that the arbitration clause contained in the Agreement is susceptible to an interpretation that encompasses MedCam's claims. The arbitration clause applies to "[a]ll disputes, controversies or differences *arising out of or in connection with* this Agreement or the making thereof." Agreement ¶ 9.5 (emphasis added). This broadly worded arbitration clause applies to *all* disputes

regarding the Agreement.[3] MedCam asserts that MCNC breached and violated duties created by the Agreement. Any determination of MedCam's claims will require, among other findings, a technical interpretation of the "MedCam Field" as defined in the Agreement and, if MCNC's disputed actions are found to fall within the "MedCam Field," a determination of whether those actions took place within the two-year noncompete period specified by the Agreement. Thus, MedCam's claims necessarily arise from the Agreement because they depend upon an interpretation of the Agreement in light of the disputed facts. The arbitration clause therefore applies to MedCam's claims.

MCNC argues that material issues of fact are in dispute, that the District Court therefore erred in denying MCNC's motion to dismiss and granting MedCam's motion to compel arbitration, and that this Court should reverse and remand the case for resolution of those factual issues through trial by jury. According to MCNC, the factual questions concern the same two issues that we have mentioned in the preceding paragraph: 1) whether the disputed technology is outside the scope of the "MedCam Field" and 2) whether the expiration of the Agreement and the two-year noncompete period terminated MedCam's rights under the Agreement.

We reject MCNC's arguments because they treat factual questions that are material only to the merits of MedCam's claims in arbitration as though they were material to the question of whether the arbitration clause requires those claims to be submitted to arbitration. We return to the standard announced by the Supreme Court: an order compelling arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Warrior & Gulf Navigation Co., 363 U.S. at

---

[3]Twin City Monorail, which reversed an order compelling arbitration, is not controlling here because Twin City Monorail confined its holding to narrowly drawn arbitration clauses covering only particular disputes. 728 F.2d at 1072–74.

582–83. For the reasons stated earlier in this opinion, the arbitration clause in the Agreement includes within its broad scope the claims MedCam is asserting against MCNC. Moreover, we are unable to discern any material fact issues that would alter that conclusion. MCNC's arguments that the technology at issue is outside the scope of the "MedCam Field" and that the noncompete clause expired before MCNC took its disputed actions do not mean that the agreement to arbitrate cannot be enforced. Instead, such arguments simply go to the merits of MedCam's claims and can be asserted by MCNC in the arbitration.

## III.

In summary, MedCam claims MCNC violated the Agreement in various respects. The Agreement contains a broadly worded arbitration clause covering *all* disputes arising from the Agreement. Because MedCam's claims arise from the Agreement, they are subject to binding arbitration under the arbitration clause. We affirm the order of the District Court.

_____