# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3519

_____

|  |  |  |
|---|---|---|
| | * | |
| 3M Company, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Amtex Security, Inc., doing | * | |
| business as Amtex Global Services, | * | |
| | * | |
| Defendant - Appellant. | * | |
| | * | |

_____

Submitted: June 11, 2008
Filed: September 16, 2008

_____

Before MURPHY, BYE, and SHEPHERD, Circuit Judges.

_____

MURPHY, Circuit Judge.

3M Company (3M) brought this matter to compel arbitration with Amtex Securities, Inc. (Amtex) of Amtex's claims in the Southern District of Texas for breach of contract, tortious interference, fraudulent inducement, unjust enrichment, and

breach of the duties of good faith and fair dealing. The district court[1] granted the motion to compel, and Amtex appeals. We affirm.

I.

In 2005 3M sought proposals from vendors to serve as the integrated service provider for 3M's production plant in Greenville, South Carolina. The integrated service provider was to ensure efficient operation of the plant by providing various administrative, technical, and professional services. Amtex offered a proposal which 3M accepted.

3M and Amtex entered into two agreements on February 13, 2006. The master agreement covered general terms of the parties' relationship such as confidentiality, indemnification, and responsibility for paying taxes and obtaining permits. A separate subagreement detailed the duration, scope of services, and contract price for services at the Greenberg plant. The subagreement also permitted 3M to contract with Amtex for services at other facilities without modifying the master agreement. Both agreements are governed by South Carolina law, and only the subagreement has an arbitration clause.

The scope of services provision in the subagreement indicated that Amtex's duties would include records management, pest control, ordering and delivery of items necessary to operate the plant, repairs and maintenance, general construction contracting, electrical installations, painting services, and equipment rental. The fixed contract price in the subagreement for 2006 was $7,128,224, an amount calculated to include a premium above Amtex's expected costs.

---

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

The subagreement called for quarterly reviews of Amtex's actual costs to determine if they fell outside upper or lower control limits. If they fell outside of either, the parties would "jointly investigate and determine the cause of the variation." A variation within Amtex's control required no action. On the other hand, variations caused by a change in production output, equipment additions, or changes to equipment or processes at the plant were to be treated as changes to the original scope of services. In those circumstances the parties were to issue a "change order amendment" to the subagreement calling for a one time lump sum payment to Amtex or credit to 3M to reflect the actual cost increase or decrease of the change.

The subagreement includes an arbitration clause in Article 4D. This clause requires arbitration in St. Paul, Minnesota if the parties cannot agree on "any of the following: a) whether a variation has occurred; b) the cause of any variation; or c) the value of a change order amendment." A "change order amendment" is defined as an amount which reflects "the actual cost increase or decrease of the Change(s)," and "Changes" are defined very broadly as "changes within the original scope of Services." The parties thus agreed to arbitrate any dispute regarding the existence, cause, or value of any change to the scope of services Amtex was to provide. The master agreement also includes a disputes provision ("general disputes clause"), Article 17, which does not require arbitration but instead gives each party the right to pursue "any legal remedy" for "any claim arising out of or attributable to the interpretation of the agreement." The parties agreed that whenever the two agreements conflicted or addressed the same topic, the subagreement would take precedence over the master agreement.

Almost immediately after entering into the agreements, the parties began to disagree about the scope of services Amtex was required to provide. During 2006 the parties mutually agreed to eliminate various items from the scope of Amtex's services, reducing the contract price to $5,882,838. While 3M paid Amtex $5,350,704 of the reduced contract price from February through November 2006, Amtex paid its

vendors only $3,802,599. The difference of $1,548,105 in Amtex's favor meant that Amtex had received far in excess of a premium over its costs for that period.

Amtex stopped paying its vendors because it believed that 3M had forced it to perform services outside the scope outlined in the subagreement and that it was entitled to, but had not received, an increase in the contract price. 3M disagreed, and the parties terminated the master agreement and subagreement effective December 31, 2006. At that time Amtex still held unpaid vendor invoices of approximately $1.2 million.

Amtex sent a letter to 3M on March 2, 2007, demanding $1,650,000 in quantum meruit or in the alternative $1,102,896 as an "equitable adjustment under Article 4 of the [subagreement]" for causing a variation in Amtex's costs. 3M responded by accusing Amtex of misappropriation. Amtex filed a complaint in Texas state court on March 30, 2007, alleging unjust enrichment, breach of contract, breach of the duties of good faith and fair dealing, and tortious interference with contract; the complaint sought only compensatory damages. 3M removed the matter to federal court in the Southern District of Texas based on diversity jurisdiction.

3M filed a demand for arbitration with the American Arbitration Association (AAA) in July 2007 and then a motion to compel arbitration in the federal district court in Minnesota. It requested arbitration in St. Paul under § 4 of the Federal Arbitration Act, 9 U.S.C. §§ 1-16, seeking $1.2 million from Amtex or an order requiring it to pay its subcontractors. In its motion papers in the district court, 3M argued that Amtex's demand for an equitable adjustment of the contract price under Article 4 of the subagreement relates to a variation and therefore falls within the scope of that agreement's arbitration clause.

Shortly after 3M demanded arbitration Amtex amended its complaint in the Southern District of Texas on August 1, 2007, to include claims for fraud, tortious

interference, and violations of the South Carolina Unfair Trade Practices Act, requesting consequential and punitive damages and attorney fees in addition to the compensatory damages sought in its original filing. 3M moved under 9 U.S.C. § 3 that the district court in Texas stay proceedings on Amtex's amended complaint until the district court in Minnesota ruled on its motion to compel arbitration. The district court in Texas granted the stay.

3M's memorandum of law in support of its motion for arbitration contended that the new allegations in Amtex's amended complaint "have no basis" and were added "for the sole purpose of attempting to defeat 3M's motion to compel arbitration." 3M asserted that despite Amtex's characterization of its claims, underlying all of them was its desire to recoup $1.2 million in additional compensation because it believed its costs of operating the plant had been increased due to actions taken by 3M. This type of dispute falls within the scope of the parties' arbitration clause said 3M. Amtex responded that the arbitration clause had a narrow scope which did not encompass the allegations in its amended complaint and that it therefore could pursue "any legal remedy" for its claims under the general disputes clause in the master agreement. It also contended that the parties could not be compelled to arbitrate because quarterly reviews of Amtex's costs were a condition precedent to arbitration and they had not been conducted.

The district court in Minnesota entered an order in September 2007 granting 3M's motion to compel arbitration. The court referenced the presumption in favor of arbitration and concluded that "3M has established that disputes between it and Amtex fall within the parties' arbitration agreement" because "regardless of how the parties characterize their claims, they are variations or changes to what was spent in furtherance of the contract." Amtex appeals, arguing that the district court erred by concluding that an arbitrator would have jurisdiction over its claims because the arbitration clause has too narrow a scope to cover them. While disagreeing with that

interpretation of their contract, 3M also argues that the district court order was a nonfinal interlocutory order over which we have no jurisdiction.

## II.

Appellate jurisdiction generally is limited to final decisions, 28 U.S.C. § 1291, and 9 U.S.C. § 16(a)(3) gives parties the right to appeal "a final decision with respect to an arbitration," which "ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment," Green Tree Fin. Corp.–Alabama v. Randolph, 531 U.S. 79, 86 (2000) (citations omitted).

3M argues that the Minnesota order to compel and the order to stay proceedings in Amtex's case in the Southern District of Texas must be considered together for purposes of finality. It points out that litigation of the merits is not ended when a court orders parties to arbitrate certain matters while others are stayed. See Green Tree, 531 U.S. at 87 n.2 (order compelling arbitration and dismissing remaining claims was final appealable order but "[h]ad the district court entered a stay instead of a dismissal . . . , that order would not be appealable"); Manion v. Nagin, 255 F.3d 535, 540 (8th Cir. 2001) (interlocutory order directing arbitration and staying action generally not appealable). Amtex responds that the district court's order to compel is final because when a motion to compel arbitration is the only matter before the court, an order granting the motion "is deemed to dispose of the entire case, and permit appellate review under 9 U.S.C. § 16(a)(3)." Prudential Ins. Co. of Am. v. Lai, 42 F.3d 1299, 1302 (9th Cir. 1994).

We agree with the position taken by Amtex and circuit courts which have concluded that when a motion to compel arbitration and a motion for a stay are brought *separately*, they should be treated individually and the resulting order compelling arbitration is final and appealable. Prudential, 42 F.3d at 1302; S + L + H S.p.A. v. Miller-St. Nazianz, Inc., 988 F.2d 1518, 1522-23 (7th Cir. 1993) (order

-6-

compelling arbitration held to be final and appealable because it originated in separate matter from case with motion to stay, even though cases were before same district court judge who held a joint hearing on the motions and issued one opinion dealing with both motions); but cf. CitiFinancial Corp. v. Harrison, 453 F.3d 245, 251 (5th Cir. 2006) (orders to compel arbitration and for stay issued by two judges sitting within the same federal district were reviewed together by the Fifth Circuit since "[j]urisdiction is lodged in a court, not in a person").

Here, 3M's motion to compel and Amtex's amended complaint were brought in two separate actions in different district courts not located within the same circuit. Neither party tried to join or transfer the cases. See S + L + H, 988 F.2d at 1522-23; McDermott Int'l, Inc. v. Underwriters at Lloyds, 981 F.2d 744, 747 (5th Cir. 1993) (cases consolidated under § 42(a) became "single judicial unit," thus order compelling arbitration and staying other proceedings was not final); Middleby Corp. v. Hussmann Corp., 962 F.2d 614, 615 (7th Cir. 1992) (district court confirmation of arbitrator's award without resolving stayed matters was not appealable because judge had consolidated the two actions for all purposes). No single circuit court would have appellate jurisdiction over orders issuing from the individual districts in which Amtex and 3M have filed. See 28 U.S.C. § 1294(1) (appeals must be taken from district court to the court of appeals for the circuit embracing the district); McGeorge v. Continental Airlines, Inc., 871 F.2d 952, 954 (10th Cir. 1989) (no jurisdiction over appeal from decision of district court not within territory of circuit). We conclude that we do have jurisdiction over the Minnesota district court's order to compel arbitration since it disposes of the only matter brought before that court.

III.

We review de novo a district court's grant of a motion to compel arbitration under 9 U.S.C. § 4. See Faber v. Menard, Inc., 367 F.3d 1048, 1051 (8th Cir. 2004). A court must grant a motion to compel arbitration if a valid arbitration clause exists

which encompasses the dispute between the parties. 9 U.S.C. § 4; MedCam, Inc. v. MCNC, 414 F.3d 972, 974 (8th Cir. 2005). The parties do not dispute that Article 4D of the subagreement is a valid arbitration clause; their disagreement centers on whether Amtex's claims fall within its scope.

Amtex urges us to conclude that the district court erred in compelling arbitration because the arbitration clause has a very narrow scope which applies only to disputes arising from the quarterly review process or from written changes to the scope of services. Since its claims are all "premised upon breaches of contract" it says, they are not covered by Article 4D. 3M responds that their arbitration clause is broad, encompassing "all disputes regarding monies allegedly owed to [Amtex] in connection with its work at the Greenville Plant" and that all of Amtex's claims come within the scope of Article 4D.

Unless the parties provide otherwise, the court rather than the arbitrator will determine whether a particular dispute falls within the scope of the clause. McLaughlin Gormley King Co. v. Terminix Int'l Co., L.P., 105 F.3d 1192, 1993-94 (8th Cir. 1997). In conducting an inquiry into whether claims come within the arbitration clause, the district court does not reach the potential merits of any claim but construes the clause liberally, resolving any doubts in favor of arbitration and granting the motion "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." MedCam, 414 F.3d at 974-75.

Article 4D of the subagreement mandates arbitration "[i]n the event [the parties] cannot agree on any of the following: a) whether a variation has occurred; b) the cause of any variation; or c) the value of a change order amendment." While the clause is not as extensive as clauses which require arbitration of "any" or "all" disputes, the parties' definitions of terms such as "change" and "change order amendment" indicate that they agreed to arbitrate a very broad range of disputes regarding the existence,

cause, or value of any change to the scope of services Amtex agreed to provide at the plant.

Although a party may not be compelled to arbitrate a dispute unless it has agreed to do so, the "liberal federal policy favoring arbitration agreements," Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983), requires that a district court send a claim to arbitration when presented with a broad arbitration clause like the one here as long as the underlying factual allegations simply "touch matters covered by" the arbitration provision, Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 625 n.13 (1985); see also Kiefer Specialty Flooring, Inc. v. Tarkett, Inc., 174 F.3d 907, 910 (7th Cir. 1999) (claim came within scope of broad arbitration provision because significant relationship existed between plaintiff's claim and the arbitration provision).

Every claim in Amtex's original complaint fell squarely within the scope of the arbitration clause, but Amtex amended its complaint shortly after 3M demanded arbitration to include claims such as fraudulent inducement and a request for punitive damages.[2]  Our task is to look past the labels the parties attach to their claims to the underlying factual allegations and determine whether they fall within the scope of the arbitration clause.  Each of the nine claims in Amtex's amended complaint includes factual allegations regarding the scope of services, the costs incurred by Amtex in providing those services, its right to receive an equitable adjustment for changes to the scope of services, or 3M's alleged withholding of payments for services.  Given the broad scope of the arbitration clause and our "insist[ence] upon clarity before concluding that the parties did *not* want to arbitrate a related matter," First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 945 (1995), we conclude that it cannot be said with positive assurance that the arbitration clause is not susceptible of an

_____

[2]3M argues that Amtex amended its complaint in an attempt to plead its way out of arbitration, but at this point we will not second guess Amtex's motivation in filing its amended complaint or touch on the merits of any of its claims.

interpretation that covers Amtex's claims. The district court therefore did not err by granting 3M's motion to compel arbitration. When the parties have agreed on an arbitration clause that appears to cover their dispute, it should be upheld. <u>See</u> <u>Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.</u>, 489 U.S. 468, 479 (1989).

Amtex also argues that the district court erred in granting the motion to compel because the quarterly expense reviews were a condition precedent to arbitration and were never conducted. That is a matter of procedural arbitrability, however, which is decided by the arbitrator. <u>See, e.g.</u>, <u>Int'l Ass'n of Bridge, Structural, Ornamental & Reinforcing Ironworkers, Shopman's Local 493</u>, 359 F.3d 954, 956 (8th Cir. 2004). This argument does not undermine the district court's decision.

If any party should be dissatisfied with the result of an arbitration, the Federal Arbitration Act itself provides avenues for relief. A disgruntled party may move to vacate, modify, or correct an arbitration award. 9 U.S.C. § 10 (vacate); 9 U.S.C. § 11 (modify or correct). If a party believes that the arbitrator exceeded the powers granted by the arbitration agreement, it may go back to the district court and request that it vacate the arbitration award. 9 U.S.C. § 10(a)(4); <u>see</u> <u>Schoch v. InfoUSA, Inc.</u>, 341 F.3d 785, 788 (8th Cir. 2003). On the other hand a satisfied party may move to confirm the award under 9 U.S.C. § 9.

In conclusion we affirm the order of the district court.

_____